UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ANTONIO MIRELES, | ) | |
| | ) | |
| Plaintiff, | ) | 10 C 6947 |
| | ) | |
| vs. | ) | Judge Feinerman |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner of Social | ) | |
| Security, | ) | |
| | ) | |
| Defendant. | ) | |

## Memorandum Opinion and Order

Antonio Mireles filed a claim for disability insurance benefits ("DIB") with the Social

Security Administration on August 15, 2008, alleging that he had become disabled on April 29,

2008. Doc. 17-6 at 9. The Commissioner denied the claim and then denied Mireles's request for

reconsideration. Doc. 17-5 at 5, 13. Mireles sought and received a hearing before an

administrative law judge ("ALJ") pursuant to 20 C.F.R. § 404.914. Doc. 17-3 at 15; Doc. 17-5

at 19. The ALJ denied the claim, Doc. 17-3 at 23-24, and the Social Security Appeals Council

denied Mireles's request for review of the ALJ's decision, Doc. 17-3 at 2, making the ALJ's

decision the final decision of the Commissioner. *See Haynes v. Barnhart,* 416 F.3d 621, 626

(7th Cir. 2005). Mireles timely filed this action pursuant to 42 U.S.C. § 405(g), seeking judicial

review of the Commissioner's final decision. Before the court is Mireles's motion for summary

judgment. For the following reasons, the motion is granted and the case is remanded to the

Commissioner for further proceedings.

### Background

The following facts are taken from the administrative record.

A.      **Factual Background**

Mireles was 36 years old on April 29, 2008, the date he allegedly became disabled.  Doc.

17-6 at 9.  Mireles has a seventh-grade education, Doc. 17-7 at 16, cannot speak, read, or write

English, *id*. at 6–7, and has a wife and three children, Doc. 17-6 at 10.  Mireles has worked as an

iron worker, janitor, and laborer, Doc. 17-7 at 18, and worked as a cleaner for Squeaky Clean

Maintenance from January 2006 until April 29, 2008, when he was dismissed for missing work,

Doc. 17-6 at 10.

The basis for Mireles's DIB claim is that he suffers from back pain.  He was injured

sometime in 2000, *ibid*., and had back surgery in October 2002 in an attempt to alleviate his

pain, Doc. 17-7 at 7.

Mireles sought treatment from an internist, Dr. Claudia Vera.  Dr. Vera's March 27, 2007

report indicates that Mireles was "un[a]ble to work due to severe low back and neck pain with

associated radiculopathy to limbs."  Doc. 17-8 at 3 (capitalization normalized).[1]  Mireles saw Dr.

Vera at least six times between February 2008 and March 2009; Dr. Vera regularly found that

Mireles suffered from "back pain (chronic)," that he was "[p]ositive for: pain in joints," that

"[t]he thoracic spine has limited ROM [(range of motion)] and pain with ROM," and that the

"lumbar spine has pain with ROM."  *Id*. at 54-69.  Her notes indicate that Mireles was taking

Nabumetone, Vicodin, and Flexeril throughout this period to treat his pain.  *Ibid*.[2]

---

[1] Radiculopathy is a painful condition resulting from damage to nerve roots. *Pain: Hope Through Research*, Nat'l Inst. Neurological Disorders & Stroke, http://www.ninds. nih.gov/disorders/chronic_pain/detail_chronic_pain.htm (last visited April 12, 2012).

[2] Nabumetone is a nonsteroidal anti-inflammatory drug ("NSAID") "used to relieve pain, tenderness, swelling, and stiffness caused by osteoarthritis" and rheumatoid arthritis. *Nabumetone*, Medline Plus, http://www.nlm.nih.gov/medlineplus/druginfo/meds/ a692022.html (last visited April 12, 2012).  Vicodin is "used to relieve moderate to

On June 16, 2009, Physician Assistant Laura Neilsen evaluated Mireles. *Id*. at 46. Neilsen observed that Mireles had "degenerative joint disease," "joint stiffness," "limited range of motion," and back pain. *Ibid*. Her notes mirror Dr. Vera's findings of pain and limited range of motion. *Id*. at 47.

In September 2008, Dr. Charles Kenney, a state agency physician, reviewed Mireles's medical records and concluded in a September 16, 2008 report that he could lift up to twenty pounds occasionally and up to ten pounds frequently, could sit or stand for up to six hours a day, and could occasionally make postural changes like stooping, kneeling, crouching, and crawling. *Id*. at 24-25. Dr. Kenney based his findings on a diagnosis of "thoracic dis[c] disease" and Mireles's "limited range of motion of thoracic and lumbar spine with pain." *Id*. at 24. Dr. Kenney evaluated Mireles's credibility, concluding: "Claimant is considered partial creditable. He has thoracic and lumbar spine pain and some limitation of range of motion. Claimant states he is able to do most of adl's [(activities of daily living)], such as cleaning and do yard work." *Id*. at 30. Dr. Kenney did not explain why he found Mireles to be only "partial[ly] creditable." *Ibid*.

Dr. Ernst Bone, another state agency physician, reviewed Mireles's medical records and in a December 4, 2008 report confirmed Dr. Kenney's assessment, finding that Mireles could perform a "wide range of light work." *Id*. at 33. Dr. Bone's report indicates that an "MRI of [Mireles's] cervical spine shows minimal changes," that an "[i]nitial face to face interview

---

severe pain" and is a combination of hydrocodone, an opiate narcotic, and acetaminophen. *Hydrocodone*, Medline Plus, http://www.nlm.nih.gov/medlineplus/ druginfo/meds/a601006.html (last visited April 12, 2012). Flexeril is the brand name of cyclobenzaprine, a muscle relaxant used to reduce pain associated with muscle injuries. *Cyclobenzaprine*, Medline Plus, http://www.nlm.nih.gov/medlineplus/druginfo/meds/ a682514.html (last visited April 12, 2012).

showed no limitations," and that Mireles's "[c]redibility is appropriately addressed" by Dr. Kenney's report. *Ibid*.

Mireles sought treatment in July 2009 from Dr. Anthony Rivera, a pain management specialist. Dr. Rivera diagnosed Mireles with "1. Failed back syndrome[;] 2. Lumbar radiculopathy[;] 3. Cervical degenerative disc disease[; and] 4. Neuropathic pain." *Id*. at 45. Dr. Rivera recommended an MRI and EMG, and prescribed Neurontin to relieve Mireles's pain. *Ibid*.[3] A July 7, 2009 MRI of Mireles's lumbar spine revealed "a mild degree of disc dehydration and degenerative change at the L-5/S-1 level[;] however[,] there [we]re no focal disc herniations [or] significant spinal stenosis." *Id*. at 38. The MRI also revealed "a mild degree of ligamentum flavum thickening and facet degenerative change without any disc herniation or significant spinal stenosis" at the L-4/L-5 level, but was "otherwise unremarkable." *Ibid*.

On July 22, 2009, Mireles again saw Dr. Rivera and told him that he had not yet started taking the prescribed Neurontin. *Id*. at 42. Dr. Rivera determined that findings from the EMG and nerve conduction study were "consistent with an [a]cute on [c]hronic right S1 motor radiculopathy," and that "[t]he results of this physiological examination account[] for some of the patient's symptoms." *Id*. at 71. On August 10, 2009, Dr. Rivera gave Mireles an epidural steroid injection. *Id*. at 40.

---

[3] An EMG (electromyography) "is a test that checks the health of the muscles and the nerves that control the muscles," and is performed by "insert[ing] a very thin needle electrode through the skin into the muscle. The electrode on the needle picks up the electrical activity given off by [the] muscles." *Electromyography*, Medline Plus, http://www.nlm.nih.gov/medlineplus/ency/article/003929.htm (last visited April 12, 2012). Neurontin is the brand name for gabapentin, an anticonvulsant that can relieve certain types of pain. *Gabapentin*, Medline Plus, http://www.nlm.nih.gov/medlineplus/druginfo/meds/a694007.html (last visited April 12, 2012).

**B.      The Administrative Hearing**

On August 25, 2009, the ALJ held a hearing at which Mireles and Lee Kanutson, a vocational expert, testified.  Doc. 17-3 at 15.  Mireles, who was represented by counsel, *id*. at 31-32, testified as follows.  He has worked as an "iron worker," a landscaper, and in other jobs requiring manual labor.  *Id*. at 34-37.  He stopped working at a warehouse where he packaged goods into bags because he "felt quite tired and then when I was driving, I would feel like … I could commit an accident. … I was all day there standing and the breaks were not enough to get some rest."  *Id*. at 37.  At the warehouse and at a "cleaning job" he held after his 2002 back surgery, Mireles could lift and carry objects weighing only up to ten pounds.  *Id*. at 38.  Mireles cannot lift more than ten pounds, and relies on his wife to carry heavy grocery bags.  *Id*. at 39-40.  He has difficulty lifting his one-and-a-half-year-old child to change his diaper, and needs his mother-in-law's help.  *Id*. at 43-44.  Mireles's lifting limitations do not prevent him from working; the reason he can no longer work is because he cannot stand all day.  *Id*. at 39.  Mireles can stand for up to forty-five minutes at a time, but if he sits down for more than one hour his leg becomes numb.  *Ibid*.  He also gets tired during the day, requiring him to lie down or sleep to get rest.  *Id*. at 46.

Kanutson testified after Mireles.  Vocational expert testimony helps to determine "whether [the claimant's] work skills can be used in other work and the specific occupations in which they can be used …."  20 C.F.R. § 404.1566(e).  At a hearing, a vocational expert may "respon[d] to a hypothetical question about whether a person with the physical and mental limitations imposed by the claimant's medical impairment(s) can meet the demands of the claimant's previous work, either as the claimant actually performed it or as generally performed in the national economy."  *Id*. § 404.1560(b)(2).

Kanutson testified as follows. Mireles's "previous work exceeds his physical capacities," assuming that he can lift ten pounds frequently and can be on his feet for up to two hours in an eight-hour day. Doc. 17-3 at 48. Someone with those limitations and with a background similar to Mireles's could, however, work as a sedentary bench assembler (3300 positions available in the Chicago, Naperville, and Joliet metropolitan areas), a sedentary machine tender (3900 positions), or a sedentary packer (2200 positions). *Id*. at 48-49. The ALJ asked how much concentration would be required to perform these jobs, and Kanutson responded that a worker would "need to be concentrated at least 85 percent of the time where you're focused on the task." *Id*. at 52. The ALJ then asked this hypothetical question: What if the claimant could stand for no more than forty-five minutes at a time, sit for no more than one hour at a time, lift and carry objects weighing no more than ten pounds, and only occasionally bend? Kanutson answered that this would reduce the number of available jobs by approximately thirty percent, leaving 2200 available bench assembler positions, 2700 sedentary assembler positions, and 1500 sedentary packing positions. *Id*. at 53. These jobs would allow a worker to change positions from sitting to standing (and back) every half-hour or so, but not more frequently than every twenty minutes. *Id*. at 53-54.

### C.    The Commissioner's Decision

On October 27, 2009, the ALJ issued a decision finding that Mireles was not disabled and was therefore not eligible for DIB. The ALJ followed the "five-step sequential evaluation process" for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v). The five steps are as follows:

> The first step considers whether the applicant is engaging in substantial gainful activity. The second step evaluates whether an alleged physical or mental impairment is severe, medically determinable, and meets a

durational requirement. The third step compares the impairment to a list of impairments [in 20 C.F.R. § 404, subpart P, app. 1] that are considered conclusively disabling. If the impairment meets or equals one of the listed impairments, then the applicant is considered disabled; if the impairment does not meet or equal a listed impairment, then the evaluation continues. The fourth step assesses an applicant's residual functional capacity (RFC) and ability to engage in past relevant work. If an applicant can engage in past relevant work, he is not disabled. The fifth step assesses the applicant's RFC, as well as his age, education, and work experience to determine whether the applicant can engage in other work. If the applicant can engage in other work, he is not disabled.

*Weatherbee v. Astrue*, 649 F.3d 565, 569 (7th Cir. 2011) (internal quotation marks omitted); *see also Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004). RFC "is defined as 'the most [the claimant] can still do despite [his] limitations.'" *Weatherbee*, 649 F.3d at 569 n.2 (alterations in original) (quoting 20 C.F.R. §§ 404.1545(a), 416.945(a)). "A finding of disability requires an affirmative answer at either step three or step five. The claimant bears the burden of proof at steps one through four, after which at step five the burden shifts to the Commissioner." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005). At the fifth step, the government "must present evidence establishing that the claimant possesses the [RFC] to perform work that exists in a significant quantity in the national economy." *Weatherbee*, 649 F.3d at 569 (footnote omitted).

Here, the ALJ determined that Mireles had engaged in "substantial gainful activity" (step one); that Mireles suffers from a "severe impairment," discogenic disorder of the spine (step two); and that this impairment was not listed or equal to a listing in 20 C.F.R. § 404, subpart P, app. 1 (step three). Mireles does not challenge the ALJ's rulings at any of these steps. Prior to step 4, the ALJ determined that Mireles had the RFC to perform sedentary work, as defined in 20 C.F.R. § 404.1567(a), "except the claimant can be on his feet standing/walking for up to 2 hours in an 8-hour workday. Additionally, the claimant can only occasionally bend." Doc. 17-3 at 18.

Based on this RFC determination, the ALJ found that Mireles is unable to perform his past work (step 4), but that he is still able to perform other work available in the local or national economy (step 5). Therefore, the ALJ found Mireles not to be disabled and declared him ineligible for DIB. Doc. 17-3 at 23-24.

## Discussion

A claimant is disabled under the Social Security Act if he or she is unable to perform "any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The claimant has the burden of showing that his impairments prevent him from performing prior employment and any other job generally available in the national economy. *Ibid*. As noted above, because the Social Security Appeals Council declined to review the ALJ's decision that Mireles was not disabled, the ALJ's decision became the Commissioner's final decision.

Section 405 of the Act authorizes judicial review of the Commissioner's final decision. *See* 42 U.S.C. § 405(g). The court reviews the Commissioner's legal determinations *de novo* and the factual findings deferentially, affirming those findings so long as they are supported by substantial evidence. *See Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010); 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive"). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007) (internal quotation marks omitted). "Substantial evidence must be more than a scintilla but may be less than a preponderance." *Ibid*. If the reviewing court finds that the Commissioner's decision is not supported by substantial evidence, "a remand for further

proceedings is [usually] the appropriate remedy." *Briscoe*, 425 F.3d at 355. Moreover, the court "cannot uphold an administrative decision that fails to mention highly pertinent evidence," *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010), or a decision containing errors of law, *Schmidt v. Astrue*, 496 F.3d 833, 841 (7th Cir. 2007).

In addition to satisfying these standards, the Commissioner's opinion must build an "accurate and logical bridge from the evidence to [the] conclusion so that [the] reviewing court[] may assess the validity of the agency's ultimate findings and afford a claimant meaningful judicial review." *Young v. Barnhart*, 362 F.3d 995, 1002 (7th Cir. 2004) (internal quotation marks and citations omitted); *accord Briscoe*, 425 F.3d at 351 ("In addition to relying on substantial evidence, the ALJ must also explain his analysis of the evidence with enough detail and clarity to permit meaningful appellate review."); *Zurawski v. Halter*, 245 F.3d 881, 888 (7th Cir. 2001) (holding that the Commissioner must "articulate at some minimal level [his] analysis of the evidence to permit an informed review") (internal quotation marks omitted). To build a logical bridge, the Commissioner must "sufficiently articulate his assessment of the evidence to assure [the court] that he considered the important evidence and to enable [the court] to trace the path of his reasoning." *Hickman v. Apfel*, 187 F.3d 683, 689 (7th Cir. 1999) (internal quotation marks and citations omitted). The court "cannot uphold a decision by an administrative agency … if, while there is enough evidence in the record to support the decision, the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996).

Mireles challenges the ALJ's RFC determination on two broad grounds: (1) the ALJ failed to build the required "logical bridge" from the evidence in the record to the RFC finding; and (2) the RFC finding was not supported by substantial evidence. Here, the ALJ did not build

the requisite logical bridge because he failed to identify the weight given to various pieces of evidence along with reasons why, thereby making it impossible to "trace the path of his reasoning."  Because the ALJ did not build a logical bridge to support the RFC determination, there is no need to reach the substantial evidence issue.

### A.    Narrative Discussion Requirement

A logical bridge for an "RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)."  S.S.R. 96-8p, 1996 WL 374184, at *7; *see also Briscoe*, 425 F.3d at 352.  Failure to provide such a narrative discussion "is sufficient to warrant reversal of the ALJ's decision."  *Briscoe*, 425 F.3d at 352.

The ALJ's opinion does not provide the required narrative discussion in determining Mireles's RFC.  The relevant portion of the opinion begins with the RFC determination: Mireles can perform sedentary work, but "can be on his feet standing/walking for up to 2 hours in an 8-hour workday" and "can only occasionally bend."  Doc. 17-3 at 18.  The ALJ's opinion then recites all of the relevant evidence in the record.  The recitation includes evidence supporting a *less* restrictive RFC—for example, the agency physicians' opinions that Mireles could lift up to twenty pounds and that he could sit, stand, or walk for up to six hours in an eight-hour workday. *Id*. at 22.  But the opinion also recites evidence supporting a *more* restrictive RFC—for example, Mireles's testimony that he cannot stand for more than forty-five minutes or sit for more than an hour at a time, that "he has trouble concentrating because of pain," and that he needs "to lie down to get any relief" from his pain and "sleeps a little during the day." *Id*. at 19.  The need to lie down is of particular relevance because an ALJ must analyze claims of pain-related fatigue. *See Myles v. Astrue*, 582 F.3d 672, 676–77 (7th Cir. 2009) (per curiam) ("The ALJ

-10-

acknowledged these complaints [of pain-related fatigue], but his analysis does not articulate his

reasons for rejecting them …. Thus, the ALJ erred ….").  Here, the ALJ did not ask Mireles

during the hearing about his need to lie down.  Nor did he ask Kanutson, the vocational expert,

whether lying down would impact Mireles's ability to work, even though the need to lie down

may prevent a claimant from performing sedentary work.  *See Bjornson v. Astrue*, 671 F.3d 640,

646 (7th Cir. 2012) ("One does sedentary work sitting (the word 'sedentary' is from the Latin

word '*sedere,*' which means 'to sit'), but not lying down.").

     The ALJ's opinion certainly "cit[es] specific medical facts (e.g., laboratory findings) and

nonmedical evidence (e.g., daily activities, observations) …."  S.S.R. 96-8p, 1996 WL 374184,

at *7.  But absent from the opinion is a "narrative discussion describing *how* the evidence

supports" the RFC finding.  *Ibid*. (emphasis added); *see Briscoe*, 425 F.3d at 352 (reversing the

ALJ's denial of benefits for failure to provide a narrative discussion).  The ALJ's opinion simply

recites the contradictory evidence described above, and then summarily concludes:

> In sum, the above residual functional capacity assessment is supported by
> the overall evidence of record; the medical evidence; the claimant's
> testimony; the claimant's activities; and other factors described above.
> Accordingly, the claimant can perform a limited range of sedentary work,
> as assessed herein.

Doc. 17-3 at 22.  The opinion never identifies which evidence was given what weight or the

reasons why.  By simply reciting the evidence in the record and summarily concluding with the

paragraph above, the ALJ did not "sufficiently articulate his *assessment* of the evidence,"

*Hickman*, 187 F.3d at 689 (emphasis added)—in fact, other than stating that he was giving

"significant weight" to the agency doctors' opinions, the ALJ did not articulate his assessment of

the evidence at all.  As such, the ALJ's opinion does not "enable [the court] to trace the path of

his reasoning," *ibid*., and thus fails to provide a logical bridge between the evidence and the RFC

-11-

conclusion. *See Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011) (finding no logical bridge where the ALJ did not "explain how she reached her conclusions about Scott's physical abilities" in the face of conflicting medical evidence); *Craft v. Astrue*, 539 F.3d 668, 677-78 (7th Cir. 2008) (finding no logical bridge "between the recitation of [the claimant's] medical evidence and the" RFC finding, where the ALJ recited much of the evidence "without a determination of weight"); *see also Martinez v. Astrue*, 630 F.3d 693, 696-97 (7th Cir. 2011); *Briscoe*, 425 F.3d at 352; *Hickman*, 187 F.3d at 689. Seventh Circuit precedent consistently holds that such decisions cannot stand and must be remanded for further consideration. *See Bjornson*, 671 F.3d at 649; *Scott*, 647 F.3d at 740; *Martinez*, 630 F.3d at 697.

### B.     Credibility Findings

Mireles also argues that the ALJ's opinion does not build a logical bridge in determining his credibility. Mireles's sole disability claim is for back pain. Social Security regulations establish a two-step process for evaluating a claimant's pain: "[f]irst, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment … that could reasonably be expected to produce the individual's pain"; and second, "the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record." S.S.R. 96-7p, 1996 WL 374186, at *2; *see also Craft*, 539 F.3d at 678 ("An ALJ must consider a claimant's subjective complaints of pain if the claimant has a medically determined impairment that could reasonably be expected to produce that pain."). Here, the ALJ's opinion found that Mireles's "medically determinable impairment could reasonably be expected to cause the alleged" pain, but then found that Mireles was not credible. Doc. 17-3 at 19.

-12-

An ALJ's credibility determination is "entitled to special deference because the ALJ is in a better position than the reviewing court to observe a witness." *Briscoe*, 425 F.3d at 354.  A reviewing court may "overturn a credibility determination only if it is patently wrong," *Craft*, 539 F.3d at 678, or if the ALJ fails to "justif[y] her conclusions with reasons that are supported by the record." *Richards v. Astrue*, 370 F. App'x 727, 731 (7th Cir. 2010); *see also Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009) (per curiam).  To build the required logical bridge for a credibility determination, the ALJ must consider not only the objective medical evidence, but also the claimant's daily activity; the duration, frequency, and intensity of pain; any precipitating and aggravating factors; the dosage, effectiveness, and side effects of medication; and functional restrictions, among other factors.  S.S.R. 96-7p, 1996 WL 374186, at *3; *accord Villano*, 556 F.3d at 562-63 (requiring an analysis of the factors listed in S.S.R. 96-7p as part of building a logical bridge for credibility determinations).  In particular, "[u]nder Social Security Ruling 96-7p, an ALJ's evaluation of a[n] applicant's credibility must be specific enough to make clear to [the court] how much weight the ALJ gave to the applicant's testimony and the reasons for that decision." *Hill v. Astrue*, 295 F. App'x 77, 81 (7th Cir. 2008).

Here, the ALJ's opinion does not build the required logical bridge between the evidence and his determination of Mireles's credibility.  The opinion concludes that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." Doc. 17-3 at 19.  The Seventh Circuit has called such language "even worse" than "meaningless boilerplate," because it "gets things backwards": "doubts about credibility [are] critical to [the] assessment of ability to work, yet the boilerplate implies that the determination of credibility is deferred until ability to work is assessed without regard to credibility." *Bjornson*,

-13-

671 F.3d at 645-46; *see also Parker*, 597 F.3d at 921-22; *Brindisi v. Barnhart*, 315 F.3d 783,

787-88 (7th Cir. 2003) ("This is precisely the kind of conclusory determination SSR 96-7p

prohibits.  Indeed, the apparently post-hoc statement turns the credibility determination process

on its head by finding statements that support the ruling credible and rejecting those statements

that do not.").  Although such boilerplate may not warrant remand per se, *see Richison v. Astrue*,

2012 WL 377674, at *3 (7th Cir. Feb. 7, 2012), remand is appropriate here because the ALJ's

remaining credibility analysis fails to build the required logical bridge.

Besides the boilerplate, the ALJ's analysis of Mireles's credibility rests on two grounds.

The first ground is as follows:

> [W]hile it is clear that the claimant suffers from pain, the overall evidence
> indicates that the claimant has not generally received the type of medical
> treatment one would expect for a totally disabled individual.  The treatment
> the claimant has received for his back pain has been essentially routine and
> conservative in nature since his surgery in 2002.

Doc. 17-3 at 21.  The second ground for discrediting Mireles is as follows:

> [T]he claimant did not see a pain management specialist until July 1, 2009.
> Additionally, Dr. Rivera, a pain management specialist, recommended that
> the claimant begin taking Neurontin.  However, regardless of his claims of
> disabling pain, the claimant failed to follow-through on that
> recommendation and admitted on July 22, 2009 that he had not begun the
> prescription.  This suggests that the claimant's pain symptoms may not
> have been as serious as he alleged.

Doc. 17-3 at 21.  The regulations allow the ALJ to discredit a claimant's credibility "if the level

or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or

records show that the individual is not following the treatment as prescribed and there are no

good reasons for this failure."  S.S.R. 96-7p, 1996 WL 374186, at *7.  However, "the ALJ 'must

not draw any inferences' about a claimant's condition from this failure unless the ALJ has

explored the claimant's explanations as to the lack of medical care."  *Craft*, 539 F.3d at 679

(quoting S.S.R. 96-7p, 1996 WL 374186, at *7). "The adjudicator may need to recontact the individual or question the individual at the administrative proceeding in order to determine whether there are good reasons the individual does not seek medical treatment or does not pursue treatment in a consistent manner." S.S.R. 96-7p, 1996 WL 374186, at *7. Here, the ALJ did not ask Mireles why he received conservative care after his 2002 surgery, why he did not see a pain management specialist until July 2009, or why he did not immediately take the Neurontin that Dr. Rivera prescribed. Had those questions been asked, Mireles's explanations "may [have] provide[d] insight into [his] credibility." *Ibid*. Because such explanations were not sought, the ALJ should not have drawn any inferences regarding Mireles's condition or credibility. *See McKinzey v. Astrue*, 641 F.3d 884, 890 (7th Cir. 2011) (holding that the ALJ had an "obligation to consider McKinzey's explanation for her failure to seek surgery before drawing an adverse inference"); *Parker*, 597 F.3d at 922 (finding error where the ALJ "made no effort to elicit an explanation" as to why the claimant "never followed up with a pain clinic"); *Moss v. Astrue*, 555 F.3d 556, 562 (7th Cir. 2009).

In pressing the contrary view, the Commissioner's brief points to the lack of objective evidence—besides Mireles's own statements and those of his wife—that he suffers pain, and asserts that the "ALJ is not 'required to give full credit to every statement of pain.'" Doc. 29 at 7 (quoting *Herron v. Shalala*, 19 F.3d 329, 335 (7th Cir. 1994)). This is correct as a general matter, but the ALJ's opinion offers no indication of how much credit—be it full, none, or some—was given to which statement of pain along with reasons for allocating such credit (or lack thereof), making "meaningful judicial review" impossible. *Young*, 362 F.3d at 1002; *see also Chase v. Astrue*, 2012 WL 258192, at *4 (7th Cir. Jan. 30, 2012) (holding that the ALJ's

-15-

"fail[ure] to specify which statements are or are not credible … leaves us with no basis to review" the ALJ's credibility and RFC determinations).

The Commissioner's brief also points out that "[t]here is no piece of medical evidence documenting even a complaint of difficulty concentrating or the need to lie down to relieve pain," that Mireles "engaged in various activities of daily living *that were inconsistent* with his claim," and that "Dr. Rivera explicitly noted that the EMG findings only corroborated *some* of Plaintiff's symptoms." Doc. 29 at 7-8 (emphasis added). Although these might be good reasons for discrediting Mireles, the ALJ's opinion does not mention them, and precedent holds that the Commissioner's brief may not build the logical bridge missing from the administrative decision under review. *See Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010) (holding that "a persuasive brief [cannot] substitute for" the ALJ's deficient opinion); *Phillips v. Astrue*, 413 F. App'x 878, 887 (7th Cir. 2010) ("These post-hoc rationalizations not only undermine our confidence in the accuracy of the Commissioner's representations of the record, but we have repeatedly warned that attempts to supplement the ALJ's decision are inappropriate. … [T]he government may not provide the missing justification for an ALJ's decision."); *Spiva*, 628 F.3d at 353 (citing cases).

Because the ALJ did not build the required logical bridge from the evidence in the record to his determinations of Mireles's credibility and RFC, the court need not (in fact, cannot) decide whether there is substantial evidence supporting the ALJ's RFC determination. *See Chase*, 2012 WL 258192, at *4; *Scott*, 647 F.3d at 741.

**Conclusion**

For the foregoing reasons, the court grants Mireles's motion for summary judgment and remands the case to the Commissioner for further review consistent with this opinion.

April 30, 2012

_____
United States District Judge