UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ANTONIO MIRELES, | ) | |
| | ) | |
| Plaintiff, | ) | 10 C 6947 |
| | ) | |
| vs. | ) | Judge Feinerman |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) ) ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Having successfully challenged the Social Security Administration's denial of his disability insurance benefit claim, 2012 WL 1520712 (N.D. Ill. Apr. 30, 2012), Plaintiff Antonio Mireles moves for an award of attorney fees and costs under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d). Doc. 40. The Commissioner does not contest Mireles's entitlement to fees and costs, but instead argues that the $10,674.71 Mireles has requested is excessive. The court rejects most of the Commissioner's arguments and awards Mireles $9,587.21. The parties also present the question whether the award should be made payable to Mireles himself or to his attorney. Unless the Commissioner finds that Mireles owes money to the United States that could require an offset, the award should be paid to the attorney.

The parties' principal dispute concerns whether Mireles is entitled to an attorney fee award that reflects an hourly rate above the EAJA's presumptive ceiling of $125 per hour. The EAJA provides in relevant part:

> The amount of fees awarded under this subsection shall be based upon prevailing market rates for the kind and quality of the services furnished, except that … attorney fees shall not be awarded in excess of $125 per hour

> *unless* the court determines that an increase in the cost of living *or* a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee.

28 U.S.C. § 2412(d)(2)(A) (emphasis added). As its use of the disjunctive "or" indicates, the statute permits an hourly rate above $125 if "the court determines" that "a higher fee" is "justifie[d]" by either of two circumstances: (1) "an increase in the cost of living," or (2) "a special factor, such as the limited availability of qualified attorneys for the proceedings involved."

Mireles does not contend that a "special factor" justifies an hourly rate above $125. He instead seeks a "cost of living" increase to $181.25 per hour, grounding his request on three submissions. First, Mireles observes that the consumer price index ("CPI") for the Chicago-Gary-Kenosha region, as measured by the U.S. Department of Labor's Bureau of Labor Statistics, shows substantial inflation since 1996, when Congress amended the EAJA to raise the hourly rate ceiling from $75 to $125. Doc. 40-1 (CPI chart documenting a 39.4% increase from March 1996 to March 2011). Second, Mireles submits four affidavits from other attorneys in the area attesting that they have been awarded at least $165 per hour under the EAJA and that they charge substantially more for work on non-Social Security matters. Doc. 40-4 (Jan L. Kodner affidavit); Doc. 40-5 (Eric Schnaufer affidavit); Doc. 40-6 (Frederick J. Daley Jr. affidavit); Doc. 40-7 (David F. Traver affidavit). Third, Mireles's attorney avers that he has faced increasing costs for rent (3% annually, which compounds to over 55% over 15 years), employee salaries (5% annually for legal staff and 3% to 4% for administrative staff), health insurance (an increase of at least 100% since 1996), and other costs associated with the practice of law, such as Westlaw fees, continuing legal education conferences, and file folders. Doc. 40 at 7-8. The attorney attests further that he charges $275 per hour for non-contingency work, an increase of

52% over his 1996 rate of $180, *id*. at 7, though presumably part of that increase is attributable to his greater experience rather than to inflation.

The Commissioner responds that Mireles's arguments are insufficient to justify a cost of living increase under the standard set forth in *Mathews-Sheets v. Astrue*, 653 F.3d 560 (7th Cir. 2011), which interpreted the above-quoted EAJA provision. The parties debate the meaning of these two paragraphs of *Mathews-Sheets*:

> It might seem that because the cost of living special factor [in 28 U.S.C. § 2412(d)(2)(A)] is not automatic, the two enumerated special factors merge; the lawyer arguing for a cost of living increase must show limited availability of lawyers able to handle such a case. But that is not correct. Inflation might have an impact across a range of fields of practice that would make it difficult to hire a competent lawyer even in a rather routine case in a field of law by no means esoteric; in such a situation a fee above the statutory fee might well be justified. When inflation is not a factor, the lawyer does have to show that there is something special about the particular type of case that justifies the higher fee. *That* special factor has not been invoked in this case.
>
> And so on remand the plaintiff's lawyer will have to show that without a cost of living increase that would bring the fee award up to $170 per hour [the amount that Mathews-Sheets had requested on cost of living grounds], a lawyer capable of competently handling the challenge that his client mounted to the denial of social security disability benefits could not be found in the relevant geographical area to handle such a case.

*Id*. at 565. The Commissioner reads the second paragraph to mean that if Mireles cannot show that no attorney in the Chicago area would have been willing and available to competently handle Mireles's appeal without a cost of living increase to $181.25 per hour, then that adjustment is prohibited. Pressing the opposite position, Mireles focuses on the passage's first two sentences, which say that it "is not correct" that a "lawyer arguing for a cost of living increase must show limited availability of lawyers able to handle such a case." Neither reading of *Mathews-Sheets* is obviously wrong or obviously right.

The court believes that Mireles's position—that he need not show that no competent lawyer in the region would have taken the case for under $181.25 per hour to justify a cost of living increase from the presumptive $125 rate—is more faithful to the EAJA's text and the overall thrust of *Mathews-Sheets*. As noted above, the statute by its plain terms allows for a rate above $125 per hour under either of two circumstances: if "the court determines that an increase in the cost of living *or* a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee." 28 U.S.C. § 2412(d)(2)(A) (emphasis added). To require a litigant seeking a cost of living increase to demonstrate the limited availability of qualified attorneys to do the job absent that adjustment would nullify Congress's decision, evidenced by its use of the disjunctive "or," to make inflation and the limited availability of competent attorneys (a "special factor") alternate routes to a fee above $125. *See Claiborne ex rel. L.D. v. Astrue*, 2012 WL 2680777, at *3 (N.D. Ill. July 6, 2012) (making the same point about *Mathews-Sheets* and the "or" in the EAJA).

Other district courts in this Circuit have rejected the Commissioner's interpretation of *Mathews-Sheets*. *See Carson v. Astrue*, 2012 WL 3562771, at *1-2 (S.D. Ill. Aug. 17, 2012) (rejecting the Commissioner's reading of *Mathews-Sheets* and granting an adjustment based on the attorney's representations that his costs had risen); *Just v. Astrue*, 2012 WL 2780142, at *1-2 (N.D. Ill. July 9, 2012) ("it is more likely that *Mathews-Sheets* only requires that a claimant present evidence showing a general increase in attorney's fees in the relevant geographical area due to inflation, such that the legal market could not sustain an hourly rate of $125"); *Shipley v. Astrue*, 2012 WL 1898867, at *3 (S.D. Ind. May 23, 2012) ("This court does not read *Mathews-Sheets* to limit the availability of a fee higher than $125 based on an increase in the cost of living since 1996 only where the lawyer can prove that qualified attorneys would not otherwise be

available."); *but see Heichelbech v. Astrue*, 2011 WL 4452860, at *2 (S.D. Ind. Sept. 26, 2011) (refusing to exceed the $125 ceiling where the plaintiff "made no attempt to demonstrate that, because of the cost of living increase since 1996, attorneys could not be found in the Evansville community and surrounding geographical area to handle a social security case for $125 an hour"). Other district courts, including courts in the Chicago metropolitan area, have found rates of around $181 per hour to be justified under the EAJA since *Mathews-Sheets* was decided. *See Dewolf v. Astrue*, 2012 WL 3260420, at *3 (N.D. Ill. Aug. 8, 2012) (approving hourly rate of $181.37); *Claiborne ex rel. L.D.*, 2012 WL 2680777, at *5 ($181.25); *Hudnall v. Astrue*, 2012 WL 2504883, at *2 (N.D. Ind. June 28, 2012) ($179).

*Mathews-Sheets* is best read to require a litigant seeking a cost of living increase under the EAJA to establish two things: (1) that the cost of living in the region has indeed increased to the degree of his requested adjustment, and (2) that his attorney's costs of providing legal services have increased in a manner that tends to show that inflation has indeed raised those costs. Both showings are necessary because general inflation might not raise the particular costs of running a law office, while a particular attorney's increased costs might be attributable to factors other than inflation, such as the attorney's decision to move to a nicer office or to buy more expensive office supplies. *Mathews-Sheets* put it this way:

> If [a litigant seeking attorney fees under the EAJA] points to inflation he still must show that it actually justifies a higher fee; for while it might seem obvious that a statutory price ceiling should be raised in step with inflation, to do that as a rote matter would produce windfalls in some cases. Inflation affects different markets, and different costs in the same market, in different ways. The framers of the Equal Access to Justice Act were right therefore not to create an *entitlement* to an inflation adjustment; the lawyer seeking such an adjustment must show that inflation has increased the cost of providing adequate legal service to a person seeking relief against the government. ...

> An inflation adjustment must … be justified by reference to the particular circumstances of the lawyer seeking the increase. Suppose inflation had not affected the wages he pays his clerical employees, or had been offset by advances in law-office technology or changes in the standards and procedures of the Social Security Administration that made it cheaper to litigate claims for disability benefits.

653 F.3d at 563-64.

By demonstrating both the general level of inflation in the region and his attorney's own cost increases over the relevant period, Mireles has shown both "that inflation has increased the cost of providing adequate legal service to a person seeking relief against the government" and that an increased rate is "justified by reference to the particular circumstances of the lawyer seeking the increase." Other district courts have likewise interpreted *Mathews-Sheets* to allow a rate increase upon a showing of both general inflation and higher costs for the lawyer seeking the adjustment. *See Dewolf*, 2012 WL 3260420, at *2-3 (granting a rate increase based on a CPI increase and the attorney's representations of his own increased costs); *Just*, 2012 WL 2780142, at *2 (same, and also considering affidavits of other local attorneys attesting to increased costs); *Claiborne ex rel. L.D.*, 2012 WL 2680777, at *1, 4-5 (same); *Seabron v. Astrue*, 2012 WL 1985681, at *3-4 (N.D. Ill. June 4, 2012) (same, and the Commissioner conceded that a cost of living rate increase to $175.69 was warranted based on the regional CPI for Chicago-Gary-Kenosha); *Scott v. Astrue*, 2012 WL 527523, at *6 (N.D. Ill. Feb. 16, 2012) (same).

Mireles's evidence might not establish to a mathematical certainty that $181.25 is the appropriate rate, but the Supreme Court has cautioned that a "request for attorney's fees should not result in a second major litigation," *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983), and the Seventh Circuit has noted that "[t]he proceeding to recover fees under the [EAJA] is intended to be summary; it is not intended to duplicate in complexity a public utility commission's rate of

return proceeding," *Sosebee v. Astrue*, 494 F.3d 583, 588 (7th Cir. 2007) (internal quotation marks omitted). The notion that a Social Security litigant might need to retain an economist as an expert witness in an EAJA proceeding to more rigorously and precisely establish the effect of inflation on the local legal market pays no heed to those admonishments—and placing that obligation on litigants might result in the Social Security Administration footing the bill. *See* 28 U.S.C. § 2412(d)(2)(A) (EAJA covers "reasonable expenses of expert witnesses"); *id*. § 2412(d)(4) (EAJA fees and expenses "shall be paid by any agency over which the party prevails from any funds made available to the agency by appropriation or otherwise").

Thus, having found that a rate increase is justified, the court accepts Mireles's proposed rate of $181.25 per hour. (The Commissioner does not propose an alternative rate in the event the court found that a cost of living increase was appropriate.) The Commissioner briefly argues that any rate increase should apply only to Mireles's principal attorney, Barry Schultz, and not to Schultz's colleagues, who are less experienced than Schultz and do not bear the increased expenses borne by his law firm. Doc. 43 at 6-7. The argument is unpersuasive. This court's acceptance of the $181.25 hourly rate is based not on factors unique to Schultz, but rather on increases in the CPI and in the costs of providing legal services. The $181.25 rate shall apply to work done by any of the attorneys who participated in the representation of Mireles.

The Commissioner challenges six hours of work by the attorney who wrote Mireles's merits reply brief. That attorney had not previously worked on the case and so had to spend six hours to "review the record and briefs." Doc. 43 at 7; Doc. 40-3 at 1. The Commissioner argues that it was unjustifiably wasteful for a new attorney to write the reply brief because the attorney who had drafted Mireles's opening brief would not have needed six hours of review time prior to drafting the reply. Doc. 43 at 7. Mireles explains that the drafter of the opening brief had left

Schultz's firm by the time the reply was written, requiring the other attorney to fill the breach. Doc. 44 at 14. That happenstance does not justify awarding fees for six hours of redundant attorney time; the costs associated with staffing issues at Schultz's law office should be borne by the attorney or Mireles, not by the government. *See Hensley*, 461 U.S. at 434 ("Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission."); *Tchemkou v. Mukasey*, 517 F.3d 506, 510 (7th Cir. 2008) ("When calculating an EAJA award, we must exclude hours that were not reasonably expended, and we may reduce the amount of the award accordingly.") (internal quotation marks omitted). Accordingly, Mireles's fee request is reduced by $1087.50 ($181.25 multiplied by six hours).

The Commissioner objects to Mireles's request for $30.13 in costs. Doc. 43 at 8. The first objection is to $17.13 for using FedEx to file the complaint. Mireles responds by explaining that regular mail would not have provided proof of delivery and that hand delivery would have been substantially more expensive than FedEx. Doc. 44 at 16. Given this, the FedEx cost was not unreasonable. The Commissioner also objects to the costs for "printing copies of briefs" for the court, arguing that Mireles "does not explain why he felt the need to print out copies of briefs 'for Court'" "[i]n the age of electronic filing." Doc. 43 at 8. This objection forgets that the court requires parties to provide printed courtesy copies of motions and memoranda. *See* N.D. Ill. L.R. 5.2(f) ("Where a filing is made electronically of a pleading, motion, or document other than an appearance form or return of service, a paper copy shall be provided for the judge within one business day, unless the judge determines that a paper copy is not required.").

The last issue is whether the Commissioner should make the EAJA award payable to Mireles himself or to his attorney. In *Astrue v. Ratliff*, 130 S. Ct. 2521 (2010), the Supreme Court held that an EAJA award "is payable to the litigant and is therefore subject to a Government offset to satisfy a pre-existing debt that the litigant owes the United States." *Id*. at 2524. That means only that the award is attributable to the litigant and so is subject to offset for debts, if any, that the litigant owes to the United States; *Ratliff* does not say anything about to whom the check should be made out in the absence of any such debt. Interpreting *Ratliff*, the Seventh Circuit said in *Mathews-Sheets* that:

> if there is an assignment [by the litigant of a prospective fee award to his attorney], the only ground for the district court's insisting on making the award to the plaintiff is that the plaintiff has debts that may be prior to what she owes her lawyer. There is no indication of that in this case, so to ignore the assignment and order the fee paid to her would just create a potential collection problem for the lawyer.

653 F.3d at 565-66. Mireles's retainer and fee agreement provides that he "agrees that these fees [under the EAJA] be [made] payable to [Mireles's counsel] directly." Doc. 40-2 at 1. Accordingly, unless the Commissioner determines that Mireles owes money to the United States, the $9,587.21 award (the $10,674.71 requested by Mireles minus the $1087.50 deducted for the six hours of redundant attorney time) shall be made payable to Mireles's counsel, Barry Alan Schultz, and sent to his office. *See Just*, 2012 WL 2780142, at *3 (EAJA award should be made payable to attorney in keeping with *Mathews-Sheets*); *Scott*, 2012 WL 527523, at *8 (same).

October 11, 2012

United States District Judge